IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:17-cr-00078 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | **ORDER ON DEFENDANT'S** |
| | : | **MOTIONS TO SUPPRESS** |
| MARCUS CROOMS, | : | |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant Marcus Crooms's Motion to Suppress

Evidence Obtained During Search of Residence at 3919 Standish Avenue, Cincinnati, Ohio and

4822 Simpson Avenue, Cincinnati, Ohio (Doc. 24) and his Supplemental Motion to Suppress

Statement[s] (Doc. 16). The Government filed memoranda in opposition to both Motions.

(Docs. 21, 25.) An evidentiary hearing was held on November 22, 2017.

## I.     BACKGROUND

On February 10, 2017, search warrants were executed at two Cincinnati properties,

3919 Standish Avenue and 4822 Simpson Avenue. (Doc. 21 at PageID 56.) Agents recovered

more than 250 grams of cocaine, as well as a substantial amount of U.S. Currency and two

firearms, from the Standish property. (*Id.*) An additional firearm was recovered at Simpson.

(*Id.*) Defendant was taken into custody for an interview, at which time he admitted the drugs,

money, and guns were his. (*Id.*)

Defendant was arrested and charged in the Hamilton County, Ohio Court of Common

Pleas with trafficking in cocaine, receiving stolen property, receiving a stolen firearm, and

having weapons under a disability. (*Id.*) On June 21, 2017, a federal grand jury indicted him

1

with one count of possession with intent to distribute, two counts of possession of a firearm by a prohibited person, and one count of possession of a firearm in furtherance of an offense. (Doc. 1.) Defendant moves to suppress the evidence seized from both of these properties for lack of probable cause. He also moves to suppress the statements he made while in police custody.

## II.    STANDARD OF LAW

### A. Probable Cause

In determining whether a search warrant is supported by probable cause, a court may consider only the "four-corners of the affidavit." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citing *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n.8 (1971)). Thus, "information known to the officer but not conveyed to the magistrate is irrelevant." *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (quoting *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citation omitted)).

An affidavit must show a "likelihood of two things" to establish probable cause for a search. *Id.* (internal quotations and citations omitted). They are: "first, that the items sought are seizable by virtue of being connected with criminal activity; and second, that the items will be found in the place to be searched." *Id.* (citing *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 n.6 (1978))) (internal quotations omitted). "[E]vidence of a crime" is a critical component of a search warrant. *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) (citing *Zurcher*). To this end, an applicant for a search warrant must recite the statutory violation for which the warrant is requested on the face of the warrant or in the affidavit in support. *See United States v. Abboud*, 438 F.3d 554, 569–71 (6th Cir. 2006).

Probable cause exists when "common-sense" suggests a "fair probability" that contraband or evidence of a crime "will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[T]he affidavit supporting the search warrant must demonstrate a **nexus** between the evidence sought and the place to be searched." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)) (emphasis added). "The connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *Id.* (quoting *Carpenter*, 360 F.3d at 595).

Probable cause "is not a high bar." *Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014). "It requires only the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." *Id.* (citing *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (quoting *Gates*, 462 U.S. at 231, 238)) (internal quotations omitted) (alteration in original). A reviewing court should give "great deference" to a magistrate judge's probable cause determination and reverse only if it was "arbitrarily" made. *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009). And it should not engage in "line-by-line scrutiny of the warrant application's affidavit." *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008). The affidavit should be judged "on the adequacy of what it **does** contain, not on what it **lacks,** or what a critic might say **should have been added.**" *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (emphases added). *Gates* established its "totality-of-the-circumstances" analysis against the backdrop of a supporting affidavit based on a confidential informant's tip. "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." 462 U.S. at 232 (quoting *Adams v. Williams*, 407 U.S. 143, 147 (1972).) An informant's reliability, veracity, or basis of knowledge are relevant considerations, but should

not be applied rigidly. *Id.* at 232–33; *see United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010) ("When an affidavit relies on hearsay information from a confidential informant, the judicial officer (and reviewing court) must consider the veracity, reliability, and basis of knowledge for that information **as part of** the totality-of-the-circumstances review.") (emphasis added); *see also United States v. King*, 227 F.3d 732, 740 (6th Cir. 2000) (Veracity, reliability, and basis of knowledge of the tip **"are relative** where the strength of one factor may compensate for the deficiency of another." (citing *Gates*, 462 U.S. at 230, 238–39)) (emphasis added).

## B. Good-Faith Exception to Exclusionary Rule

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987). But courts typically should *not* suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). The four specific situations in which an officer's reliance cannot be considered "objectively reasonable" are: (1) when the warrant is issued on the basis of an affidavit that an affiant knows—or is reckless in not knowing—contains false information; (2) when the issuing magistrate abandons his or her neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*).

## III. ANALYSIS

By way of overview, the Court agrees with the Government that the facts recited in the supporting affidavit for the Standish Avenue warrant establishes the kind of "fair probability" the Fourth Amendment requires. The Court also agrees that, even if this warrant was deficient, any evidence obtained from the property nonetheless should be saved by the *Leon* good-faith exception. The supporting affidavit for Simpson Avenue, however, fails to establish probable cause, and good faith cannot save the search there. Finally, the Court finds that Defendant knowingly and voluntarily waived his *Miranda* rights during the interview held after execution of the warrants.

### A. Motion to Suppress Evidence

### 1. 3919 Standish Avenue, Cincinnati, Ohio 45213

Defendant contends that probable cause is lacking as to the Standish warrant, arguing principally that the information provided by the confidential informant was "unreliable" and "not current." (Doc. 24 at PageID 82.)

#### a. The Affidavit

Agent Joshua Fey, Hamilton County Sheriff's Office Regional Narcotics Unit ("RENU"), made the affidavit in support of the search warrant application for Standish Avenue (*see* Doc. 21-2 at PageID 68) and testified at the November 22 hearing. In the affidavit, Fey avers that a source of information ("SOI") contacted him in December 2016 about Defendant, described as "responsible for trafficking large quantities of heroin and cocaine in the Hamilton County area." (*Id.* at PageID 69.) In the "recent" past, he/she had provided Fey with "reliable and credible information" regarding drug traffickers in the Hamilton County area that "resulted in not only felony arrests but also seizures in large quantities of narcotics." (*Id.*) The SOI gave a physical

description of Defendant, recited the cellular telephone number he used to contact him, described the color, make, and model of the car Defendant drove, and indicated that Defendant lived with his girlfriend at an address on Standish Avenue. (*Id.*) The SOI also told Fey that he/she was inside the residence on Standish Avenue as recently as October 2016—some two months earlier—and observed "a large quantity of heroin and cocaine as well as weapons in the house." (*Id.*) The SOI stated generally that Defendant would meet with individuals "at the house to conduct drug transactions as well as meet in public." (*Id.*) Shown a picture retrieved from the Hamilton County Auditor's website, the SOI positively identified the house in which he observed the drugs and guns as 3919 Standish Avenue, Cincinnati, Ohio 45213. (*Id.*)

To corroborate the SOI's tip, Agent Fey ran a Regional Crime Information Center ("RCIC") inquiry. (*Id.*) He discovered an individual named Marcus Crooms who matched the physical description given by the SOI. (*Id.*) Fey produced a picture of Defendant to the SOI, which he/she positively identified. (*Id.*) Fey confirmed that a silver Dodge Charger (Ohio plate GYQ5322), model year 2010, was registered to Defendant, who had multiple drug possession and trafficking convictions. (*Id.* at PageID 69–70.) In addition, on January 6, 2017, Agent Fey initiated surveillance in the area of 3919 Standish Avenue. (*Id.* at PageID 70.) He observed the silver Dodge Charger registered to Defendant parked, but running, across the street. (*Id.*) Minutes later, the Dodge Charger pulled into the driveway when a different vehicle, a dark-colored BMW (Ohio plate GZW5386), approached and parked in front of the residence. (*Id.*) An unknown male black exited the vehicle, met with Defendant in the driveway, and both men entered through the front door of 3919 Standish Avenue. (*Id.*) Fey ran an RCIC inquiry on the second vehicle, whose owner, like Defendant, had multiple drug possession and trafficking convictions. (*Id.* at PageID 70–71.)

6

On February 7, 2017, a different officer, Sergeant Voelker, initiated surveillance at 3919 Standish Avenue. (*Id.* at PageID 71.) He observed Defendant's silver Dodge Charger parked in the driveway of the residence. (*Id.*) Voelker conducted a trash pull from a receptacle at the curbside directly in front of the residence, retrieving two white plastic bags. (*Id.*) He transported the bags to the RENU office where Agent Fey analyzed the contents and recovered, among other items,[1] multiple torn plastic baggies with a tan residue. (*Id.*) Fey conducted a field test of the baggies there, and they tested positive for the presence of heroin. (*Id.*) Fey tendered his Affidavit in support of a search warrant that same day, February 7, 2017, which was issued thereafter by a Hamilton County, Ohio Municipal Court Judge. (*Id.* at PageID 72, 73.)

### b. **The November 22, 2017 Hearing**

On cross examination, Agent Fey conceded that the activity observed on January 6, 2017 and recited in the affidavit was not criminal in nature. He also agreed with defense counsel that the case file did not contain a lab report (*e.g.*, from the Hamilton County Crime Lab) that confirmed the result of the field test positive for heroin. Fey did not equivocate as to *whether* he conducted the field test, however, responding "I can attest that I did the test." Elaborating, he stated that he conducted the test in a "clean area" at the RENU office: he cut the baggies, placed them whole in a test kit, and shook. A "green" reaction indicated the presence of heroin, after which he tagged the baggies as evidence.

Regarding the SOI, Agent Fey said he was approached with "I got somethin' on Crooms." Fey testified that his SOI was not "currently working off charges" as a *quid pro quo*, of sorts, for providing the tip and explained that it was not a "common practice" to include an SOI's criminal record in the affidavit in support of the warrant. Despite defense counsel's best

---

[1] Numerous items of mail addressed to "Mariah M. Coursey" at 3919 Standish Avenue also were recovered.

efforts, Fey resisted labelling as "boilerplate" the language he used in the affidavit to describe his SOI as both "reliable" and "credible."

### c. **Probable Cause Supports the Warrant**

The Court rejects Defendant's arguments and finds that probable cause supports issuance of the search warrant for 3919 Standish Avenue. The standard words used by Agent Fey to confirm his SOI's reliability—clearly boilerplate in nature—are perfectly acceptable, particularly when, as here, portions of the information provided were independently corroborated. *See King*, *supra*, 227 F.3d at 741–43. As recited earlier, Fey received a tip that Defendant—who drives a silver Dodge Charger—was selling drugs out of a residence on Standish Avenue that he occupied with his girlfriend. Fey produced a photograph of Defendant that matched the physical description given by the SOI, and, in turn, the SOI positively identified that photograph. Fey confirmed Defendant's status as a drug dealer and his ownership of a silver Dodge Charger. Approximately a month before application for the search warrant, Fey saw Defendant exit the silver Dodge Charger and enter the residence with a convicted drug trafficker. Then, on February 7, 2017, a trash pull conducted by a fellow RENU agent tested positive for heroin, with Fey himself conducting the field test.

In and of itself, of course, status as a drug dealer will not give rise "to a fair probability that drugs will be found in his home." *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005). Rather, "[Sixth Circuit] cases teach, as a general matter, that if the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer." *Brown*, *supra*, 828 F.3d at 384. However, "[i]t is well established in the[e] Sixth Circuit that drug paraphernalia recovered

8

from a trash pull establishes probable cause to search a home when combined with other evidence of the resident's involvement in drug crimes." *Abernathy*, *supra*, 843 F.3d at 251–52 (citing, *inter alia*, *United States v. Martin*, 526 F.3d 926, 937 (6th Cir. 2008)).

Defendant's staleness argument, to the effect that the SOI claims to have last seen drugs and guns inside the residence in October 2016, is mooted by the February 7, 2017 trash pull and field test, both conducted the same day as the application for the warrant. *Id.* at 250 (courts do not consider "stale" information when determining whether an affidavit establishes probable cause) (citing *United States v. Spikes*, 158 F.3d 913, 923–24 (6th Cir. 1998)). Defendant's lack of specificity argument is likewise a red herring. Fey recounted that the SOI stated that he/she had been inside the Standish Avenue property where he/she observed "a large quantity of heroin and cocaine as well as weapons in the house." (Doc. 21-1 at PageID 62.) These assertions within the affidavit "establish the necessary nexus between the place to be searched and the evidence sought." *Brown*, 828 F.3d at 382 (quoting *United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009)).

### d. Good-Faith Exception to Exclusionary Rule Would Apply

Had we concluded otherwise and, under the totality of the circumstances, found probable cause to be lacking, the Court determines that the *Leon* good-faith exception to the exclusionary rule nevertheless would apply. There has been no allegation that the state municipal court judge acted as a rubber stamp for Agent Fey. And while defense counsel made passing reference to requesting a *Franks* hearing, no suitable proffer was made as to how Defendant would establish, by a preponderance of the evidence, that Agent Fey knowingly or recklessly included false statements or omitted material information when applying for the warrant. *See Franks v. Delaware*, 438 U.S. 154, 156, 169–70, 171 (1978). The warrant is not facially invalid, leaving

9

the Court to consider only whether Agent Fey's affidavit is "bare bones," that is, one that states only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. White,* 874 F.3d 490, 496 (6th Cir. 2017) (quoting *Laughton,* 409 F.3d at 748 (quoting *Weaver,* 99 F.3d at 1378)).

When the reviewing court can identify "**some** connection, regardless of how remote it may have been"—"some modicum of evidence, however slight"—"between the criminal activity at issue and the place to be searched," then the affidavit is not bare bones and reliance on it is reasonable. *Id.* at 497 (quoting *Laughton,* 490 F.3d at 749–50) (emphasis in original). Further, a bare bones affidavit should not be confused with one that lacks probable cause, and the distinction is not one of semantics. *Id.* "There must be daylight between the 'bare-bones' and 'substantial basis' standards if *Leon*'s good-faith exception is to strike the desired balance between safeguarding Fourth Amendment rights and facilitating the criminal justice system's truth-seeking function." *Id.*

Defendant appears to suggest that a minimally sufficient nexus is missing because of a lack of obvious criminal activity at the Standish property. This position ignores the trash pull, of course, and it misapprehends the Sixth Circuit's instruction in *White*. "To determine whether a reasonable officer would rely on a judicially authorized warrant, a reviewing court must read the affidavit reasonably," meaning "holistically, examining the totality of the circumstances and employing a healthy dose of common sense. *Id.* at 502 (citing *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001)). A natural reading of the affidavit connects Defendant with Standish and Standish with heroin. In the alternative, therefore, *Leon*'s good-faith exception applies and saves the search at 3919 Standish Avenue.

## 2. 4822 Simpson Avenue, Cincinnati, Ohio 45227

Defendant objects to the Simpson warrant on the same bases he asserted as to the one for Standish. (Doc. 24 at PageID 81–82.) In this instance, his objections are well-founded.

Agent Fey is the affiant again, and the affidavit for Simpson Avenue repeats all the information included in the one for the Standish property. (Doc. 21-1 at PageID 61–64.) Added, though, is a tip that fellow RENU Agent Kassem received on February 8, 2017. (*Id.* at PageID 64.) Kassem's SOI stated that he met with Defendant inside 3919 Standish Avenue as recently as two weeks prior "for the purpose of purchasing illegal narcotics" and, in fact, "specifically purchased cocaine" from him. (*Id.*) Kassem's SOI also stated that he "has purchased illegal narcotics" from Defendant from inside the residence at 4822 Simpson Avenue, which the SOI—claiming to have "grown up with [CROOMS] as friends since they were kids"—identified as the residence of Defendant's mother. (*Id.*)

That same day, Agent Fey verified through a "law enforcement database" that "Pamela CROOMS" resides at 4822 Simpson Avenue and lists it as her residence on her driver's license. (*Id.*) In addition, she "has been the registered co-owner on multiple vehicles with Marcus CROOMS." (*Id.*) Agent Fey also notes that Defendant lists 4822 Simpson Avenue as his residence on his driver's license and on vehicle registrations, including his 2010 silver Dodge Charger. (*Id.* at PageID 64–65.) Law enforcement surveillance conducted at 4822 Simpson Avenue during January 2017—prior to the Kassem SOI tip—confirmed the presence of the silver Dodge Charger at the residence "on multiple occasions." (*Id.* at PageID 64.)

Several deficiencies attend the Simpson affidavit. First, there is no language, even "standard" language, attesting to the reliability or credibility of Agent Kassem's SOI. Agent Fey recites only that he/she currently "is providing Agent Kassem with information regarding drug

11

traffickers in the Hamilton County area." (*Id.* at PageID 64.) Second, while the Kassem SOI states he purchased drugs from inside 3919 Standish Avenue within two weeks of February 8, 2017, there is *no* time frame associated with his purchase inside the residence at Simpson Avenue . Given that he claims to be life-long friends with Defendant, in theory a drug purchase could have occurred *any* time in the past.

Agent Fey's corroboration, including pre-tip surveillance, established that Defendant resides at 4822 Simpson Avenue as does a female with the same surname. Her age, which would have been discovered during Fey's Bureau of Motor Vehicles search, is not listed within the affidavit, and the Court cannot infer that Pamela Crooms is Defendant's mother simply by virtue of the fact that she has co-owned vehicles with him. Regardless, this information substantiates that 4822 Simpson Avenue, like 3919 Standish Avenue, is a residence of a known drug dealer, and this fact, "standing alone," is not enough. *Brown*, 828 F.3d at 383 (quoting *Frazier*, 423 F.3d at 533). Save for the tip of another agent's SOI—whose description did not merit even a boilerplate acknowledgement of trustworthiness—there is no "specific and concrete" connection between the residence at Simpson Avenue and drug trafficking. *Id.* at 382 (citing *Carpenter*, 360 F.3d at 595). Although not a "high" bar, we conclude that the warrant for 4822 Simpson Avenue was issued without probable cause. *See Kaley*, 134 S. Ct. at 1103. And given the bare bones character of the affidavit in support, the Court further concludes that the *Leon* good-faith exception cannot apply. A natural reading of the affidavit connects Defendant with Simpson, but not—with any degree of reliability—Simpson with narcotics.

The evidence seized from 4822 Simpson Avenue, Cincinnati, Ohio 45227 will be suppressed.

## B. Motion to Suppress Statements

Defendant was not present at either the Standish or the Simpson property searches. Rather, Agent Fey's first contact with Defendant was in connection with a traffic stop initiated that same morning on Madison Road in the Madisonville neighborhood of Cincinnati. Defendant was transported to the Hamilton County Sheriff's Office – Patrol Headquarters on Hamilton Avenue where he was interviewed.

Prior to the interview, Fey testified that he advised Defendant of his *Miranda* rights.[2] He placed a copy of the Sheriff's Office standard "ADVICE of RIGHTS" form[3] in front of Defendant, asking him to "follow along" while he, Fey, read the text aloud. Although he could not remember his "exact" words, Fey stated that Defendant indicated that he would speak with him. Fey watched as Defendant signed his name on the form in the section titled "WAIVER OF RIGHTS."[4] Fellow RENU Agent Jeremy Beckwith was present as a witness, and his signature

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] The following text appears beneath the caption **"YOUR RIGHTS"**

> Before we ask you any questions, you must understand your rights.
>
> You have the right to remain silent.
>
> Anything you say can be used against you in court.
>
> You have the right to talk to lawyer for advice before we ask you any questions and have him with you during questioning.
>
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
>
> If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

(Doc. 21-3.)

[4] The following text appears beneath the caption **"WAIVER OF RIGHTS"**

> I have read this statement of my rights/had this statement of my rights read to me (circle one or both) and I understand what my rights are as set forth above. No threats or promises have been made to me and I freely and voluntarily waive these rights. I am willing to answer at this time.

(Doc. 21-3.)

on the form so reflects. To the Court's eye, the completed "ADVICE OF RIGHTS" form appears in order.

Agent Fey confirmed that, before the interview, no promises were made to Defendant. Defendant did not ask for an attorney at any time before—or during—the interview, nor did he ever ask Fey to stop the interview. Fey testified that all customary procedures were followed in this instance, and the Court finds his testimony to be eminently credible. Thus, the Court determines that Defendant was properly advised of his *Miranda* rights, which he knowingly and voluntarily waived. Any statements made by him during his interview with Agent Fey on February 10, 2017 regarding evidence seized from Standish Avenue, accordingly, will be admissible. Defendant's Motion to suppress his statements made while in police custody will be DENIED as to Standish Avenue and, in light of the Court's ruling on Defendant's Motion to suppress evidence, DENIED AS MOOT as to Simpson Avenue.

## IV. CONCLUSION

For the reasons set forth above, Defendant Marcus Crooms's Motion to Suppress Evidence Obtained during Search of Residence at 3919 Standish Avenue, Cincinnati, Ohio 45213 and 4822 Simpson Avenue, Cincinnati, Ohio 45227 (Doc. 24) is **GRANTED** as to Simpson Avenue but **DENIED** as to Standish Avenue, and Defendant's Supplemental Motion to Suppress Statement (Doc. 16) is **DENIED** as to Standish Avenue and **DENIED AS MOOT** as to Simpson Avenue. Defendant's boilerplate Motion to Suppress (Doc. 17) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated: Jan 26, 2018

Susan J. Dlott
Judge Susan J. Dlott
United States District Court

14